O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| MARK PERRIN, | \* | ED CV 08-00595 LLP (SSx) |
| | \* | |
| Plaintiff, | \* | |
| | \* | MEMORANDUM OPINION |
| vs. | \* | AND ORDER RE: MOTION |
| | \* | FOR NEW TRIAL |
| DEPUTY DON GOODRICH #1781, | \* | |
| individually and as a peace officer; | \* | |
| DEPUTY TONY HOXMIER #2510, | \* | |
| individually and as a peace officer; | \* | |
| | \* | |
| Defendants. | \* | |
| | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

A jury trial, which commenced on June 14, 2011, resulted in a verdict for the Plaintiff, Mark Perrin, and against both Defendants Goodrich and Hoxmeier, on several causes of action, and a Judgment on the Verdict in the amount of $326,012.00. Defendants unsuccessfully moved for a Judgment as a Matter of Law (Doc. 125). Defendants have also moved for a new trial on multiple grounds regarding both liability and damages. Doc. 126.

A.

WHETHER THE DENIAL OF A PEREMPTORY CHALLENGE ON JUROR NO. 12
ENTITLES DEFENDANTS TO A NEW TRIAL?

During voir dire in this case, the prospective juror No.12, a Black woman in her sixties, disclosed that she had a case against the MTA, public transportation bus company, a couple of years before and that police officers had been involved in the action. The prospective juror asserted, however, that she understood the case at hand involved different people and that she could put the prior litigation experience aside. Doc. 132, TT 32-33. This same juror disclosed reservations about sitting as a juror in a case where racial profiling was in issue because her son and a couple of friends had been involved in racial profiling. The juror concluded, however, that she would be able to listen to the evidence in the case at hand and reach a fair conclusion. Doc. 132, TT 33-34.

Defendants' counsel challenged the juror for cause, although he acknowledged the juror was less adamant about racial profiling than other prospective jurors and also stated, "I'm not going to be so blind as to suggest that racial profiling doesn't occur." Doc. 132, TT 95. After noting that the juror was thoughtful in her answers and in her demeanor, this Court denied the challenge for cause. Doc. 132, TT 96.

Defendants exercised three peremptory challenges regarding potential jurors who were persons of color, and Perrin challenged two of the peremptory challenges pursuant to *Batson v. Kentucky,* 476 U.S. 79 (1986), and *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614 (1991) (private litigant in a civil case may not use peremptory challenges to exclude jurors on account of their race). The Court concluded that the Defendants had provided an adequate race-neutral explanation for the male prospective juror, but took under advisement over the noon-hour the *Batson* challenge to the Black female prospective juror who had disclosed that her son had been subject to racial profiling. Doc. 132, TT 113-114.

After the noon break the Court followed the analysis set forth in *Snyder v. Louisiana*, 552 U.S. 472 (2008), by considering all of the circumstances that bear upon the issue of racial animosity and then concluded that the juror's race was a substantial or motivating factor in the Defendants' peremptory challenge. Having made that determination, the Court granted the *Batson* challenge.

*Batson* sets forth a three-step process for a trial court to use in adjudicating a claim that a peremptory challenge was based on race: (1) a party must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; (2) if that showing has been made, the opposing party must offer a race-neutral basis for striking the juror in question; and (3) in light of the parties' submissions, the trial court must determine whether the party challenging the peremptory challenge has shown purposeful discrimination. *Miller-El v. Cockrell*, 537 U.S. 322, 328-329 (2003).

"[A] prima facie case of discrimination can be made out by offering a wide variety of evidence, so long as the sum of the proffered facts gives 'rise to an inference of discriminatory purpose.'" *Johnson v. California*, 545 U.S. 162, 169 (2005)(quoting *Batson*, 476 U.S. at 94). "This is a burden of production, not a burden of persuasion." *Green v. LaMarque*, 532 F.3d 1028, 1029 (9th Cir. 2008). In the case at hand, all of Defendant's peremptory challenges involved persons of color. In addition, the female Black juror was of the same race as the Plaintiff, had pronounced that

2

she would be able to listen to the evidence in the case at hand and reach a fair conclusion, and counsel for Defendants had acknowledged this juror was less adamant about racial profiling than other prospective jurors. A prima facie case of discrimination had been made.

With regard to the second step of the *Batson* analysis, Defendants rely on *Hernandez v. New York*, 500 U.S. 352, 360 (1991), for the proposition that a neutral explanation is all that is required and that unless a discriminatory intent was inherent in the explanation for the peremptory challenge, the reason offered for the challenge will be deemed race neutral. Although Defendants contend in their motion and brief that "[t]he prospective juror had a pending lawsuit against MTA that involved the police," the transcript discloses that the juror actually stated, "I had a case against MTA a couple of years ago." Doc. 37, TT 32. Although the juror advised that police were involved in her case, the extent and nature of the involvement was not a subject of inquiry. Police are involved in many cases ranging from automobile personal injury accidents to criminal cases, and their involvement in a potential juror's past litigation does not preclude a potential juror from sitting on a case that involves police. Also, the explanation that a Black potential juror has had a relative who has been subject to racial profiling, may not of itself deem the explanation an acceptable, race-neutral explanation for striking that potential juror. This is especially true in light of defense counsel's earlier acknowledgment that the juror was less adamant about racial profiling than other prospective jurors and that racial profiling does occur.

This Court followed the requirements of *Snyder v. Louisiana*, 552 U.S. 472 (2008), in applying step three of the *Batson* inquiry. *Snyder* requires that the trial court evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor supports the basis for the strike attributed to the juror by the party exercising the peremptory challenge. 552 U.S. at 1208. The Court observed and recalled the demeanor of the juror during the questioning in voir dire.[1] As this Court explained, there was nothing in the demeanor of the juror that justified the strike since the juror appeared and conducted herself in a serious and

---

[1] With regard to counsel's demeanor, this Court stated, "I would say, parenthetically, unless somebody is an awfully poor lawyer, it would be kind of unusual that a lawyer would demonstrate anything in his demeanor or her demeanor that would show discriminatory intent. But there is none shown here."

3

thoughtful manner. Although the juror had family that had been involved in profiling, she had no such experience herself.

Defendants have not presented persuasive argument that the *Batson* challenge should not have been granted. Even assuming error in granting the *Batson* challenge, Defendants have not demonstrated that the fairness or integrity of the trial was compromised by the denial of their peremptory challenge. *See United States v. Martinez-Salazar*, 528 U.S. 304 (2000) (the loss of a peremptory challenge alone does not constitute a violation of the constitutional right to an impartial jury or automatically reversible statutory error). The denial of the peremptory challenge does not entitle Defendants to a new trial.

B.

## WHETHER DEFENDANTS ARE ENTITLED TO A NEW TRIAL BASED ON INCONSISTENT VERDICTS?

Defendants contend that the verdicts in this case are inconsistent and such inconsistencies justify a new trial. In *Floyd v. Laws*, 929 F.2d 1390 (9th Cir.1991), the Ninth Circuit cited to *Gallick v. Baltimore & O.R.R. Co.*, 372 U.S. 108, 119 (1963), in setting forth the following principles for reconciling apparent inconsistencies among answers to special verdict questions:

> [W]hen confronted by seemingly inconsistent answers to the interrogatories of a special verdict, a court has a duty under the seventh amendment to harmonize those answers, if such be possible under a fair reading of them. [citation omitted] A court is also obligated to try to reconcile the jury's findings by exegesis, if necessary. [citation omitted] Only in the case of fatal inconsistency may the court remand for a new trial.

*Floyd v. Laws*, 929 F.2d at 1396; *see also Los Angeles Nut House v. Holiday Hardware Corp.*, 825 F.2d 1351, 1353-1354 (9th Cir. 1987) ("When there is an inconsistency between a general verdict and a written interrogatory, if reasonably possible we resolve the inconsistency in favor of sustaining the judgment ... unless it is impossible to harmonize the answers under a fair reading."); *White v. Ford Motor Co.*, 312 F.3d 998, 1005 (9th Cir. 2002) ("In an inconsistent verdict case, a court asks, not whether the verdict necessarily makes sense under any reading, but whether it can be read in light of the evidence to make sense.").

The jury responded in the negative to Question No. 1. Question No. 1 asked: "Did either of

4

the Defendants violate 42 U.S.C. § 1983 by depriving Mark Perrin of his rights to free speech under the First Amendment of the United States?" The jury responded in the affirmative to Question No. 12. Question No. 12 asked: "Did either of the Defendants interfere or attempt to interfere with Mark Perrin's First Amendment right to challenge their conduct by threatening or committing violent acts?" Defendants contend this constitutes inconsistent verdicts. These questions, however, involve different causes of action and contemplate different conduct of the parties.

In light of the Complaint,[2] evidence, case law,[3] and instructions,[4] it would have been desirable for Question No. 1 to have asked whether either of the Defendants retaliated against Perrin for exercising his right to be free speech, not whether they deprived him of his right to free speech. The evidence clearly established that Perrin exercised his right to free speech. Perrin may have been justified, but has not, objected to the wording of Question No. 1. Question No. 12 presents a different question from that presented in Question No. 1 in that Question No. 12 asks in the alternative whether the Defendants attempted to interfere with Perrin's First Amendment right of free speech. This question does not require a determination that the Defendants were successful in silencing Perrin. The jury's responses to these questions, read in light of the evidence of this case, makes sense. *See White v. Ford Motor Co.*, 312 F.3d at 1005. Defendants are not entitled to a new trial on the basis of inconsistent verdicts regarding Questions 1 and 12.

The jury responded in the negative to Questions No. 2 and No. 8. Question No. 2 asked: "Did either of the Defendants violate 42 U.S.C. § 1983 by depriving Plaintiff Mark Perrin of his rights under the Fourth Amendment of the United States Constitution to be free from an unreasonable seizure of his person?" Question No. 8 asked: "Did either of the Defendants falsely arrest Plaintiff Mark Perrin?" The jury responded in the affirmative to Questions No. 5 and 6. Question No. 5 asked: "Did either of the Defendants violate 42 U.S.C. § 1985(2) by conspiring to deprive Plaintiff

---

[2]Perrin's first cause of action for violation of 42 U.S.C. § 1983 alleges retaliatory police action. Doc. 1, p.6.

[3] Retaliation as punishment for the exercise of First Amendment rights "would constitute a separate constitutional violation that could form the basis of liability under section 1983." *Duran v. City of Douglas, Arizona*, 904 F.2d 1372, 1378 (9th Cir. 1990).

[4] *See* Instructions No. 18 and 20. Doc. 114.

Mark Perrin of his constitutional rights for the purpose of impeding, hindering, obstruction or defeating the due course of justice in the Courts of the State of California by reason of racial prejudice?" Question No. 6 asked: "Did either of the Defendants violate 42 U.S.C. § 1985(3) by conspiring to deprive the Plaintiff Mark Perrin of his constitutional rights to equal protection and immunities under the law by reason of racial prejudice?" Defendants, in arguing the responses to these question are evidence of inconsistent verdicts contend, "It is impossible for the same traffic stop and arrest to be both valid and based on racial discrimination." Doc. 126, p. 17. Defendants are mistaken on this point. It is consistent for the jury to reject that the stop was based on racial profiling, not speeding, and to find that Perrin was legitimately arrested for his refusal to provide a driver's license, and then also find that Defendants, by reason of racial prejudice, conspired to mislead the District Attorneys who prosecuted Perrin for resisting and battery. Goodrich, in fact, testified that at the time he made the determination to stop Perrin for speeding, he could not identify his race or ethnicity. Doc. 142, TT 127. The evidence supports and the verdicts reflect that after a valid stop and arrest, the Defendants' conduct toward Perrin went awry based on racial animus.

The jury responded in the negative to Question No. 11. Question No. 11 asked: "Did either of the Defendants subject Mark Perrin to violence based on Mark Perrin's race or color, in violation of California Civil Code § 51.7?" The jury responded in the affirmative to Questions, 3, 5, and 6. Question 3 dealt with excessive force, and race is not a component of an excessive force violation under 42 U.S.C. § 1983. Although race is a component of the 42 U.S.C. § 1985(2) and 42 U.S.C. 1985(3) violations set forth in Question No. 5 and 6, violence was not a required component of either Question No. 5 or Question No. 6, which address due course of justice in the California courts and the constitutional rights to equal protection and immunities. The answers to Questions No. 3, 5, 6, and 11 do not present a fatal inconsistency which requires a new trial.[5]

---

[5]In addition, if the jury found a violation under California Civil Code Section 51.7 , they were required by the statute and the instruction based on California Civil Jury Instruction 3027 (Instruction No. 44) to impose, in addition to actual damages, a civil penalty of $25,000, and punitive damages. The jury, which did not impose punitive damages, may not have wanted to impose the civil penalty and punitive damages required by California Civil Code Section 51.7. If that consideration affected their not finding a violation under California Civil Code Section 51.7, Defendants benefitted from that finding and Perrin has not objected to the same.

Defendants also contend that because the jury responded in the negative to Questions No. 2 and No. 8 regarding an unreasonable seizure and false arrest, an inconsistent verdict arose because of the affirmative response to Question No. 10. Question No. 10 asked: "Did either of the Defendants conspire to cause Mark Perrin to be assaulted and falsely imprisoned?" Defendants contend that false imprisonment and false arrest are the same tort so the answers are contradictory and cannot be reconciled. However, as previously discussed the jury was justified in finding the initial stop for speeding and arrest for failure to produce the driver's license was valid. The jury could also find based on the evidence that the Defendants assaulted and then conspired to have Perrin falsely imprisoned for resisting arrest and battery against the Defendants. There are no fatal inconsistencies in the responses to these questions, and Defendants are not entitled to a new trial based on inconsistent verdicts.

## C.

## WHETHER DEFENDANTS ARE ENTITLED TO A NEW TRIAL BASED ON ALLEGED ERRORS IN THE JURY INSTRUCTIONS AND VERDICT FORM?

In arguing that a new trial is warranted based on erroneous jury instructions and verdict form, Defendants contend that "[j]ury instructions and verdict forms are often prepared on the fly during trial." In the case at hand, the Court's proposed jury instructions with cites were handed to counsel on Thursday, June 23, 2011, the seventh day of trial. Doc. 141, TT 239. On the morning of June 24, 2011, the Court inquired of counsel whether they had any substantive objections to the instructions. Doc. 142, TT 4. Defense counsel requested an addition to Instruction No. 23, and the Court took the requested addition under advisement. Doc. 142, TT 5-6. On the afternoon of June 24, 2011, the Court incorporated part of the addition requested by defense counsel in Instruction No. 23. Doc. 142, TT 231-232. The fifty-two final instructions and Verdict Form, without cites, were given to counsel on the afternoon of Monday, June 27, 2011. Doc. 143, TT 212. Closing argument commenced on the morning of June 28, 2011, after which a fifteen-minute recess was taken, and the Court then read the instructions to the jury. Although Defendants had objected in May and early June of 2011 to instructions submitted by Perrin (Doc. 77, 81), no further objections to the Court's proposed instructions nor requests for additional instructions were made by counsel before the jury was instructed. Doc. 144, TT 336.

Perrin relies upon Fed. R. Civ. P. 49(a)[6] and Ninth Circuit case law[7] for his position that Defendants waived any objections to the jury instructions and Verdict Form they now claim are in error. This Court will follow Federal Rule of Civil Procedure 51 in considering Defendants' issues concerning alleged errors in the instruction. Even if a party did not properly object to or request an instruction, Fed. R. Civ. P. 51(d)(2)provides: "A court may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights."

Jury instructions are to be considered as a whole and evaluated as to whether they were misleading or inadequate. They are also to be evaluated as to whether any error was harmless. *Browning v. United States*, 567 F.3d 1038, 1041 (9th Cir. 2009)(citing *Guebara v. Allstate Ins. Co.*,

---

[6]Fed. R. Civ. P. 49(a)(3) provides in part: "A party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury."

[7] In *Hunter v. County of Sacramento*, 652 F.3d 1225, 1230 n.5 (9th Cir. 2011), the Ninth Circuit recounted as follows its history in treating the failure to object to jury instructions in civil cases:.

> Traditionally, this court adhered to the strict rule that it would only review objections to jury instructions in a civil case if the party properly objected at the district court level. *See Voohries–Larson v. Cessna Aircraft Co.*, 241 F.3d 707, 713–14 (9th Cir.2001) ("[W]e have consistently declared that there is no 'plain error' exception in civil cases in this circuit." (citing *Hammer v. Gross*, 932 F.2d 842, 847 (9th Cir.1991) (en banc))). However, in 2003, Rule 51 was amended to add subsection (d)(2), which permits plain error review even when a party failed to properly object before the district court if the error affects substantial rights. *See* 9C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2558 (3d ed. 2008) ("The 2003 amendment ... of Rule 51 codified the previous practice followed by most circuits that said that the appellate court may reverse for plain error in an instruction to the jury even if there had been no objection to it."). Accordingly, the 2003 amendment abrogated the rule set out in our pre–2003 decisions. Our post–2003 unpublished decisions following our earlier rule did not recognize that Rule 51 had been amended to permit plain error review. *See Reyna v. City of Portland*, 270 Fed.Appx. 682, 686–87 (9th Cir.2008) (unpublished); *Mosqueda v. County of Los Angeles*, 171 Fed.Appx. 16, 17 (9th Cir.2006) (unpublished).

237 F.3d 987, 992 (9th Cir.2001), and *Swinton v. Potomac Corp.*, 270 F.3d 794, 805 (9th Cir.2001) (incorrect vicarious liability instruction held more probably than not harmless)).

First Amendment Instructions

Defendants, relying on *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-286 (1977), an employment case, contend that Instructions No. 20 and 45 were in error for omitting language that in a First Amendment retaliation case the burden of proof shifts to the defendant to prove the same action would have been taken absent the speech. Defendants contend, "The jury was effectively told to find in favor of the plaintiff if the speech was *a* factor in the deputies' actions." Doc. 126, p. 19. In making this argument Defendants overlook the language of the instructions. Instruction No.20, addressing a violation of 42 U.S.C. § 1983, provides in Element 3: "The Plaintiff's use of protected speech was a substantial or motivating factor for the alleged retaliation." In addition, Instruction No. 20 states,"A substantial or motivating factor is a significant factor." Instruction No. 19 further provided:

> In order to establish that the acts or failure to act of the Defendants Goodrich or Hoxmeier deprived the Plaintiff of his particular rights under the United States Constitution, as explained in later instruction, the Plaintiff must prove by a preponderance of the evidence that the acts or failure to act were so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury or injuries to Plaintiff.

Doc. 114, p.21. Defendants presented evidence that the action taken against Perrin was taken for reasons other than Perrin's exercise of his First Amendment rights, and the Instruction allowed the jury to consider this evidence. To the extent that the jury held in favor of the Defendants in response to Question No. 1 in the Verdict form, Defendants cannot contend their rights were violated. The jury was adequately instructed on causation with regard to the First Amendment retaliation claim under 42 U.S.C. § 1983, and Defendants are not entitled to a new trial based on this issue.

Bane Act Instruction

Instruction No. 45 dealt with the Bane Act, Civil Code section 52.1. Defendants allege, without citing authority, that Instruction No. 45 "completely omitted causation." Doc. 126, p. 19. The language of Instruction No. 45, however, follows the language set forth in CACI 3025. As was stated in *Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860, 881, 57 Cal.Rptr.3d 454,

471 (2007): "The elements of a cause of action under Civil Code section 52.1 are stated in CACI No. 3025." The jury was properly instructed on the elements of the Bane Act.

Malicious Prosecution Instruction

To prevail on a § 1983 claim of malicious prosecution, a plaintiff "'must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.'" *Awabdy v. City of Adelanto,* 368 F.3d 1062, 1066 (9th Cir. 2004) (quoting *Freeman v. City of Santa Ana,* 68 F.3d 1180, 1189 (9th Cir.1995)). Defendants contend that Instruction 26, dealing with malicious prosecution, was erroneous in that it omitted the element of proving an intent to deprive the plaintiff of a constitutional right. In so contending Defendants again overlook the instructions read as a whole. Instruction No. 26 advised that the malicious prosecution claim was brought under 42 U.S.C. § 1983. Instructions No. 17, 18, and 19 advise that liability under 42 U.S.C. § 1983 requires a finding that the Defendant under consideration deprived the Plaintiff of a right, privilege or immunity secured by the Constitution of the United States. Doc. 114, pp. 18, 19, 20. The Verdict Form also referenced the malicious prosecution claim as a violation of 42 U.S.C. § 1983. Doc. 107, p.2.

Defendants inaccurately contend that the Instructions did not address the rule of *Haupt v. Dillard,* 17 F.3d 285, 289-290 (9th Cir. 1994), and the exceptions to the *Haupt* rule which was set forth in *Awabdy v. City of Adelanto,* 368 F.3d 1062, 1066 (9th Cir. 2004)

Instruction No. 26 provided in pertinent part:

> A Plaintiff asserting a malicious prosecution under § 1983 can rebut the prima facie finding of probable cause arising from a trial court's decision to hold him to answer after a preliminary hearing by showing that the criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith. The decision to file a criminal complaint is ordinarily presumed to result from the independent determination on part of prosecutor, and thus usually precludes liability for malicious prosecution for those who participated in the investigation or filed report that resulted in the initiation of proceedings. That presumption of prosecutorial independence, however, does not bar a § 1983 malicious prosecution claim against state or local officials who improperly exerted pressure on the prosecutor, by knowingly providing misinformation to him, concealing exculpatory evidence, or otherwise engaging in wrongful or bad faith conduct that was actively instrumental in causing the initiation of criminal proceedings against the Plaintiff.

Doc. 114, p. 28.

10

Although Defendants never submitted such an instruction, they contend they were entitled to an instruction that the *Awabdy* exception to the rule of *Haupt v. Dillard* must be proved by third party witnesses and that a plaintiff's disagreement with police reports is not sufficient proof of an exception to the rule of *Haupt v. Dillard*.  Although inconsistencies between a plaintiff's and the defendants' version of events alone is insufficient to rebut the presumption of prosecutorial independence in a malicious prosecution case, *see Blankenhorn v. City of Orange*, 485 F.3d 463, 483 (9th Cir. 2007), Perrin provided more rebutting evidence than his own account of the incident in question and there was no foundation in the evidence for this unrequested instruction.

At the trial in this case Defendant Goodrich conceded that his "recollection of events differs from the recollection of everyone else involved in this incident." Doc. 142, TT 173. Defendants gave accounts of the events of January 19, 2004, that differed from earlier accounts they had given.  The Defendants' accounts of what happened in the incident with Perrin differed with each other's accounts in a number of ways.  In addition, the Defendants' account of what happened with Perrin differed from the account given by Perrin's passenger, Michael Martin.  The evidence did not require giving the unrequested instruction that the *Awabdy* exception to the rule of *Haupt v. Dillard* must be proved by more than a plaintiff's disagreement with police reports and Defendants were not prejudiced by the failure to give such an instruction.

Defendants cite *Estate of Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1031 (9th Cir. 2008), a summary judgment case involving a malicious prosecution claim for an underlying civil action, for Defendants' position that the court is supposed to decide whether probable cause exists and is only supposed to submit factual disputes to the jury.  The *Interscope Records* case actually states: "'[W]hen the state of the defendant's factual knowledge is resolved or undisputed, it is the court which decides whether such facts constitute probable cause or not.'" 515 F.3d at 1031 (quoting *Sheldon Appel Co. v. Albert*, 254 Cal.Rptr. 336, 765 P.2d 498, 507 (1989)).  The *Interscope Records* case is inapposite.  In the case at hand, the criminal court had made a determination of probable cause.  Whether Defendants fabricated evidence to create probable cause for Perrin to be prosecuted for resisting and batter was in dispute and a question for the jury's determination.

The instructions as a whole adequately and correctly instructed on a § 1983 claim of malicious prosecution.  Defendants are not entitled to a new trial based on these instructions.

11

42 U.S.C. §§ 1985(2) and 1985(3) Instructions

Defendants' entire argument regarding the 42 U.S.C. §§ 1985(2) and 1985(3) Instructions is set forth as follows:

> Instructions 27 and 28 address the § 1985(3) claim and Instruction number 30 addressed the § 1985(2) claim. As detailed in the motion for judgment under Rule 50, part of plaintiff's prima facie case required him to prove unequal treatment based on racial animus. The instructions on both claims erroneously allowed the jury to find liability without ever finding any unequal treatment.

Doc. 126, p. 12. This argument provides no legal authority and is contradicted by the explicit language of the instructions. Instruction No. 27 references "conspiracies that are motivated by dislike for a class of people, such as a racial group." Instruction No. 28 lists as an element: "Defendants conspired because of their invidiously discriminatory animus against African Americans." Instruction No. 30 provides that the conspiracy claim under 42 U.S.C. § 1985(2) is based on Defendants' alleged "animus against African Americans, of which class Plaintiff belongs." Doc. 114, 29-2. In addition, both Question No. 5 and Question No. 6 of the Verdict form asked whether the Defendants conspired "by reason of racial prejudice." Doc. 107, p.3. Defendants have failed to demonstrate that they are entitled to a new trial based on their objections to the Section 1985(2) and 1985(3) instructions.

Intentional Infliction of Emotional Distress Instructions

Defendants maintain that Instructions 35-39 were erroneous because the jury should have been told that it could only award damages for the initial arrest and use of force because California law expressly precludes liability for based on the initiation or prosecution of criminal proceedings. California Gov. Code § 821.6 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." The instructions, read as a whole, however, advised the jury that the emotional distress claim was based on the improper use of force. Instruction No. 39,[8] which sets forth the affirmative defense to the intentional infliction of

---

[8]   This instruction provides:

> In response to Plaintiff's claim of intentional infliction of emotional distress, Defendants claim that they are not responsible for Plaintiff's harm, if any, because each Defendant's conduct was permissible. To succeed in this affirmative defense, the Defendant under consideration must prove by a

emotional distress claim, refers specifically only to the seizure and use of force against Plaintiff as the conduct on which the intentional infliction of emotional distress was based.  Defendants are not entitled to a new trial based on the intentional infliction of emotional distress instructions.

Conspiracy to Assault and Falsely Imprison Instructions

Defendants contend that they are entitled to a new trial based on Instructions Number 40-42, regarding the state conspiracy to assault and falsely imprison Perrin.  Defendants first contend that false arrest and false imprisonment are not separate causes of action, and that since false arrest, not false imprisonment, was defined and explained in the Instructions, the jury was effectively told there was a separate basis for liability, the elements of which were left to their conjecture.  In reading the instructions as a whole and in context, this Court rejects this contention.

Defendants also maintain that they are entitled to a new trial because they were not advised of the elements of an assault.  Interestingly, Defendants argue, "[u]nder California [law], a civil assault is merely an attempted battery or putting someone in fear of an imminent battery," and that the assault portion of the instructions duplicated the excess force instruction.  Since the excessive force instructions required the use of actual force, under the Defendants' theory of the jury's interpretation of the instructions, it would be the Plaintiff, not the Defendants, who would be prejudiced by the failure to instruct on the elements of a civil assault.

Defendants further argue that the instructions and Question No. 10 implied that damages included the criminal case even though Section 821.6 precludes liability on a malicious prosecution theory.  The language of the instructions and Question No. 10 does not support this argument.  Both Instruction 40 and 41, as well as Question No. 10, explicitly limited the conspiracy to committing the

---

preponderance of the evidence all of the following:
1. That the conduct of the Defendant under consideration was exercising his legal right to seize and use force against the Plaintiff;
2. That the conduct of the Defendant under consideration was lawful and consistent with community standards; and
3. That the Defendant under consideration had a good-faith belief that he had a right to engage in the conduct.
If you find all of the above, then the conduct of the Defendant under consideration was permissible.

Doc. 114, p. 41.

assault and false imprisonment. Defendants have not established that their substantive rights were affected by any alleged error in the state conspiracy instructions and Interrogatory and are not entitled to a new trial on this ground.

### D.

### WHETHER DEFENDANTS ARE ENTITLED TO A NEW TRIAL BASED ON IMPROPER ADMISSION OF EVIDENCE?

Defendants contend that the Court improperly allowed Sergio Rodriguez to testify about the incident in which he was stopped by Defendant Goodrich. Although Defendants, in their motion for new trial describe Rodriguez as Puerto Rican, Rodriguez testified at trial that his ethnicity was Hispanic and Black, that he described himself as a person of color, and that he had been perceived as a person of color in his social and business contacts. Doc. 135, TT 50.

Contrary to the assertions of Defendants, Rodriguez was not allowed to give a lay opinion on whether Defendants' conduct regarding Perrin was motivated by discriminatory intent. During the trial the Court instructed the jury that consideration of Rodriguez' testimony was limited to the issue of whether racial bias was a motivating factor in the actions of Officer Goodrich with regard to Rodriguez.[9] Doc. 135, TT 83. Other acts evidence is admissible to prove motive. Fed. R. Evid. 404(b); *see also Andrews v. City and County of San Francisco*, 205 Cal.App.3d 938, 944-945, 252 Cal.Rptr 716, (1988) (prejudicial error to keep from jury evidence of prior and subsequent assaultive conduct of booking officer). The Ninth Circuit deems Fed. R. Evid.404(b) regarding other acts evidence to be a rule of inclusion. *Boyd v. City and County of San Francisco*, 576 F.3d 938, 947 (9th Cir. 2009). Defendants are not entitled to a new trial based on the admission of Rodriguez's testimony.

---

[9]Although the Court also instructed that the testimony could be considered with regard to considering the response of the County of Riverside to complaints against its law enforcement officers, this instruction and related testimony became moot by the Plaintiff dropping his *Monell* claims.

E.

## WHETHER DEFENDANTS ARE ENTITLED TO A NEW TRIAL ON THE GROUNDS THAT THE VERDICT IS AGAINST THE CLEAR WEIGHT OF THE EVIDENCE?

"'A trial court may grant a new trial only if the verdict is against the clear weight of the evidence, and may not grant it simply because the court would have arrived at a different verdict.'" *Martin v. California Dep't of Veterans Affairs*, 560 F.3d 1042, 1046 (9th Cir. 2009)(quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)).

Defendants claim that the jury's verdict against them on the issue of whether they used excessive force is against the clear weight of the evidence. The Ninth Circuit recently examined the requirements for establishing a 42 U.S.C. § 1983 claim for excessive force under the Fourth Amendment in *Glenn v. Washington County*, 2011 WL 6760348 (9th Cir. Dec. 27, 2011)(reh'g denied).[10] The Ninth Circuit in *Glenn v. Washington County* set forth as follows the analysis for an excessive force case:

> In evaluating a Fourth Amendment claim of excessive force, courts ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). This inquiry "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. Reasonableness therefore must be judged

---

[10] In *Glenn v. Washington County*, a summary judgment case, the Ninth Circuit recognized as follows how police misconduct cases involve disputed factual contentions and credibility determination:

> "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir.2005) (en banc) (alteration in original) (internal quotation marks omitted); *see also Espinosa* [*v. City and County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010)] ("[T]his court has often held that in police misconduct cases, summary judgment should only be granted 'sparingly' because such cases often turn on credibility determinations by a jury.").

2011 WL 6760348 at *5.

15

> from the perspective of a reasonable officer on the scene, "rather than with the 20/20 vision of hindsight." *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)).
>
> "Our analysis involves three steps. First, we must assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of force inflicted.'" *Espinosa [v. City and County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010)](quoting *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir.2003)). "[E]ven where some force is justified, the amount actually used may be excessive." *Santos [v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)]. Second, we evaluate the government's interest in the use of force. *Graham*, 490 U.S. at 396. Finally, "we balance the gravity of the intrusion on the individual against the government's need for that intrusion." *Miller*, 340 F.3d at 964.

2011 WL 6760348 at *5.

In evaluating the type and amount of force inflicted, the Court observes that a carotid restraint or hold is at least potentially lethal force in that if the hold is in place long enough, death can result. Doc. 138, TT 9. Although the Defendants dispute that a successful carotid restraint was applied, there was substantial evidence, in addition to the testimony from Perrin, that the carotid restraint was put in place, causing Perrin to lose consciousness and fall face-first to the pavement. Perrin's passenger's account of Perrin's fall to the ground is consistent with Perin's version of events. Photographs were received into evidence showing that Perrin's eyes were blood shot and that his face was bruised after his contact with Defendants. Ex. 10, 21. Gary Brooks, who picked up Perrin from the Riverside County Jail on January 19, 2004, testified that Perrin's eyes looked to be "just so full of blood," that Perrin had marks on his face and arms, and that Perrin's "neck was hurting him real bad." Doc. 137, TT 12-13.

Evaluating the government's interest in the use of force "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Perrin was stopped for speeding about 10 miles over the speed limit. After asking why he was stopped instead of promptly responding to the request to supply license and registration, Perrin was arrested for not providing his license and registration. No serious crime preceded the use of force in this case, and whether or not the carotid restraint was successfully applied, the use of any

16

force may have been excessive under the facts of this case.

Perrin did not pose an immediate threat to the safety of the Defendants or others. Lionel Murphy testified that after responding to a code for assistance and first approaching the place where Perrin was stopped, he was waived away by Hoxmeier, who signaled that Hoxmeier and Goodrich were okay. Doc. 137, TT 63. This testimony is consistent with Perrin and Michael Martin's testimony that the Defendants were not being threatened by Perrin prior to these Defendants using force against Perrin. In contradiction to Hoxmeier's version of events, Goodrich testified he did not believe Perrin purposefully tried to strike him. Doc. 142, TT 160.

Although the Defendants gave conflicting accounts in support of their position that Perrin was resisting arrest, there was substantial evidence that Perrin was not resisting arrest or trying to evade arrest by flight. According to Michael Martin, Perrin's passenger, moments after Perrin stepped out of his vehicle, and Goodrich put Perrin in a hold, Hoxmeier hopped on Perrin's back, put Perrin in a headlock and took him down to the ground. Doc. 69, pp. 30-40. Martin testified that when the Defendants were trying to handcuff Perrin, "It looked like [Perin] was confused on what was going on." Doc. 69, p. 77. Perrin also testified that he had been treated for tendinitis and was unable, not unwilling, to bend his arms in the handcuffing and told the Defendants of this inability.

The Court must now "balance the gravity of the intrusion on the individual against the government's need for that intrusion." *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003). As both of the first two steps of the analysis weigh in favor of Perrin, the Court concludes that the verdict in Perrin's favor on the excessive force claims was supported by the evidence and not against the clear weight of the evidence. Defendants are not entitled to a new trial based on insufficient evidence for the excessive force verdict.

The Court also rejects Defendants' claim that they are entitled to qualified immunity "even if the court or jury in hindsight finds that they violated the federal Constitution." Doc. 126, p.17. The Court has determined with regard to the excessive force claim that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009).

17

F.

## WHETHER DEFENDANTS ARE ENTITLED TO A NEW TRIAL OR REMITTITUR ON THE GROUNDS THAT THE DAMAGES AWARDED WERE EXCESSIVE?

Defendants contend that this Court should consult state law and order a new trial based on that state law, including Government Code § 821.6, which provides immunity for initiating and prosecuting litigation. In support of their position, Defendants cite to *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415 (1996) (state law controlling compensation awards for excessiveness or inadequacy can be given effect, without detriment to Seventh Amendment's reexamination clause, if review standard set out in state statute is applied by federal trial court judge). In *Gasperini*, however the plaintiff brought a diversity action alleging only state-law claims for relief, including breach of contract, conversion, and negligence. Unlike the plaintiff in the case at hand, the plaintiff in *Gasperini* did not bring claims under 42 U.S.C. §§ 1983 and 1985.

In *Martinez v. California*, 44 U.S. 277, 284 n.8 (1980), the Supreme Court admonished:

> Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced.

*See also Wallis v. Spencer*, 202 F.3d 1126, 1144 (9th Cir. 2000). This Court has determined that the jury properly determined liability under the federal statutes. Federal, not state law, controls in determining whether the award of damages under these federal causes of action was excessive.

Defendants also contend that the verdict on economic damages was not supported by the evidence presented at trial. If a district court determines that a jury's award of compensatory damages is excessive after viewing the evidence in the light most favorable to the prevailing party, "[i]t may grant defendant's motion for a new trial or deny the motion conditional upon the prevailing party accepting a remittitur. The prevailing party is given the option of either submitting to a new trial or of accepting a reduced amount of damage which the court considers justified." *Fenner v. Dependable Trucking Co.*, 716 F.2d 598, 603 (9th Cir.1983). By offering the prevailing party the option of a new trial, the district court avoids a violation of the Seventh Amendment. *Hetzel v. Prince William County*, 523 U.S. 208, 211 (1998).

18

Defendants first contend that the jury's award of $140,000.00 for costs and fees in defense of the criminal accusations was not supported by the evidence presented at trial. Perrin testified to paying a $5,000 retainer, a $500 fee to an investigator, a $324 court reporter fee for the conditional examination of Mr. Martin, a $121.50 fee for the transcript of Hoxmeier's testimony in the first criminal trial, a $621 court reporter fee for the transcript of the first trial, and $110,000 in attorney fees for the preliminary proceedings and preparation for two separate criminal trials involving numerous charges. Doc. 140, TT 30-32. Although Exhibit 28, the detailed attorney charge list was referenced at the trial, the Plaintiff did not request that it be received and submitted to the jury, so the Court will not consider this marked but unreceived exhibit. The evidence presented to the jury supported an award of $116,566.50 for costs and fees in defense of the criminal accusations.

Perrin does not dispute that the award for criminal defense costs should be reduced to what was presented to the jury. If the Court finds no evidence of passion and prejudice affected the liability finding, remittitur is an appropriate method of reducing an excessive verdict. *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 655 (9th Cir. 2005). The Court does not find evidence that passion and prejudice affected the liability finding or the damages award. The jury in this case did not award punitive damages, although it could have done so if it were inclined to respond with passion and prejudice. The error in calculating the criminal defense costs is most likely attributable to the jury having had to rely on oral testimony as opposed to reviewing actual billing statements. The Court will order a remittitur in the amount of $23,433.50 for the criminal defense costs, unless Perrin requests a new trial.

Defendants contend that the award of $60,000 for loss of earnings is excessive and not supported by the evidence. Perrin testified that he lost $2,800 in pay for days off at Pepsi, and $1,824 in days off at Sam's Club to defend his criminal charges. Perrin also testified that he was terminated from Pepsi for missing work to attend court hearings and defend the criminal charges. He also testified that he had to elect to quit as opposed to be terminated from his work at Sam's Club because of the time off he required to defend his criminal charges. Perrin further testified that he was not employed in 2007 until December of 2007 because of having to defend his criminal case and that he had to live off his savings. Doc. 140, TT 27-30. The highest hourly wage testified to by Perrin was $10.65. Although the finding of $60,000.00 for lost wages is not "grossly excessive or monstrous,"

19

so as to give rise to an inference of passion and prejudice that would require a new trial, a remittitur is appropriate. *See Snyder v. Freight, Const., General Drivers, Warehousemen and Helpers, Local No. 287*, 175 F.3d 680, 689 (9th Cir.1999), the evidence in this case supports only a year's salary in 2007 at $10.65 an hour ($22,152) plus the other amounts attributable to lost wages at Pepsi and Sam's Club. The Court will order a remittitur in the amount of $33,224 for the loss of earnings, unless Perrin requests a new trial.

Defendants further contend that the towing and vehicle recovery expenses are not supported by the evidence because Perrin was justifiably arrested for speeding and then refusing to produce his driver's license and registration. In viewing the evidence in the light most favorable to the jury's findings, the Court does not find the towing and vehicle recovery expenses award excessive because the jury could have found that if Perrin had not been subjected to excessive force, arrangements could have been made for Martin or another individual to pick up Perrin's vehicle.

In addition, Defendants contend that the awards of physical pain in the amount of $25,000 and emotional pain in the amount of $95,000 are excessive. This Court has no basis to determine that the jury did not follow the Court's instructions on awarding damages that reasonably and fairly compensate the Plaintiff for physical and emotional pain. The Court will not displace the jury's award just because it may have come to another conclusion. *See Tortu v. Las Vegas Met. Police Dep't*, 556 F.3d 1075, 1086 (9th Cir. 2009).

For all the reasons set forth in this Memorandum Opinion,

IT IS ORDERED:

1. That Defendants' Motion for New Trial is denied, except with regard to the Court's ruling on the award of damages for criminal defense expenses and lost wages; and

2. The Plaintiff shall have 15 days from the date of this Order to elect between a remittitur on both the award of damages for criminal defense expenses and lost wages or a new trial.

Dated this 19th day of March, 2012.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

20